**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(WEST PALM BEACH DIVISION)**

CASE NO. _____

THOMAS HAYDEN,

        Plaintiff,

vs.

VIKING ARMS CONDOMINIUM
ASSOCIATION, INC.,

        Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

COMES NOW Plaintiff, THOMAS HAYDEN, by and through his undersigned counsel and sues the Defendant, VIKING ARMS CONDOMINIUM ASSOCIATION, INC., stating as follows:

**I. NATURE OF THE ACTION**

1.    This is a civil action brought pursuant to the federal Fair Housing Act (hereafter "FHA"), 42 U.S.C. §§ 3601-3619, 42 U.S.C. § 1982, for damages and injuries arising from the Defendant's, VIKING ARMS CONDOMINIUM ASSOCIATION, INC.'s, unlawful discrimination against Plaintiff, THOMAS HAYDEN, a person with a disability.

**II. PARTIES**

2.    Plaintiff, THOMAS HAYDEN (hereafter "Plaintiff" or "HAYDEN"), a resident and citizen of Palm Beach County, Florida, is an individual with a disability that qualifies him for the protections of the FHA. Plaintiff currently resides at 202 Lucerne Avenue, Apt. 3, Lake Worth

Beach, Florida 33460 but wishes to soon relocate to 1527 S. Flagler Drive, Unit 116F, West Palm Beach, FL 33401.

3.      Defendant, VIKING ARMS CONDOMINIUM ASSOCIATION, INC. (hereafter "Defendant" and/or "VIKING ARMS" or "the Association"), is a Florida non-profit corporation, organized and operating pursuant to Chapter 718, Florida Statutes, with its primary place of business and current mailing address 1527 S. Flagler Drive, West Palm Beach, Florida 33401, which is responsible for administering and governing its housing complex pursuant to its Articles of Incorporation, Declaration of Condominium and By-Laws, its Rules and Regulations, and Amendments thereto. It also sets, approves, and enforces the policies, practices, rules, and regulations for the VIKING ARMS Community.

4.      The condominium units governed by VIKING ARMS are "dwellings" within the meaning of 42 U.S.C. § 3602(b) of the FHA.

5.      VIKING ARMS is subject to the anti-discrimination provisions of the FHA and amendments thereto.

### III. JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § § 3601, *et seq*. and § 3613.

7.      The Court has jurisdiction to declare the rights and legal relations of the parties and to order furthers relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court is authorized to issue preliminary injunctive relief and a temporary restraining order pursuant to Federal Rules of Civil Procedure 65(a) and 65(b), and to award relief under 42 U.S.C. § 300a-7(c) and (d), including but not limited to, damages and attorneys' fees.

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 89(c) because Defendant resides (is located) in this District and the events giving rise to the Plaintiff's claims arose in Palm Beach County which is within the confines of the West Palm Beach Division of the Southern District of Florida.

9.      All conditions precedent to the bringing of this action by HAYDEN have occurred, or their performance has been waived by Defendant.

### IV. FACTUAL ALLEGATIONS

10.     HAYDEN owns, and at all times material hereto has owned, Unit 116F, 1527 S. Flagler Drive, West Palm Beach, Florida 33401, located within the building VIKING ARMS governs (hereafter "the Unit").

11.     At all times material hereto, HAYDEN suffered from, has a history of suffering from, and still suffers from Parkinson's disease which causes both physical and mental impairments that substantially limit one or more of his major life activities. Accordingly, HAYDEN has a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA.

12.     HAYDEN relies upon an assistance animal, a ten year old Chihuahua mix named "Dexter." Dexter assists HAYDEN by providing emotional support that mitigates HAYDEN's stress and anxiety, which helps HAYDEN cope with his Parkinson's symptoms.

13.     VIKING ARMS does not allow dogs and describes itself as a "No Dog Building."

14.     On March 18, 2024, HAYDEN requested an exemption from VIKING ARMS' no dog policy as a reasonable accommodation of his disability-related need for his emotional support animal ("ESA"), Dexter, notifying VIKING ARMS' Property Manager, Pamela Melvin, that:

> I have decided not to renew my tenants lease, which expires 5/16/24. I will be moving into the unit with my Partner, Brian Mathis, during late May. In addition I have an ESA [Emotional Support Animal], a small 12 lb dog named Dexter. I have recent letter from my Doctor supporting the need for

3

> an ESA and I can supply whatever vaccination papers are required by the condo. Please let me know what paper work is needed for Brian and Dexter. Thanks.

HAYDEN's 3/18/2024 email is marked and incorporated herein as part of collective "Exhibit 1."

15.     That same day, VIKING ARMS, through Property Manager Melvin, responded:

> I will need an application from Brian and we do a background check. There is a $150 Application fee**. The Association is very strict about allowing ESA animals.** I will need all documentation and the attached forms.

See Exhibit 1 (emphasis supplied).

16.     HAYDEN immediately reported that Dexter is ten years old and does not bark, and provided a photo of Dexter and a letter from his doctor, Laurice Gabriel, MD. See Exhibit 1.

17.     VIKING ARMS rejected the letter from his Doctor, stating:

> Please read page 2 of the forms for an ESA animal. The letter must state what the dog does to help and the doctors [sic] license number. All of the stated information must be included.

Exhibit 1.

18.     On March 20, 2024, HAYDEN replied, providing the requested "updated" letter from his Doctor and expressly inviting the Association to contact his Doctor with any questions at the number she provided. Exhibit 1.

19.     Unsatisfied, VIKING ARMS then contended "[y]ou still need to fill out the forms[.]" Exhibit 1.

20.     On March 22, 2024, HAYDEN dutifully completed and submitted the forms VIKING ARMS insisted upon, comprised of "Service/Support Animal Registration" and a seven-page adhesion contract entitled "Policies and Procedures for Disabled/Handicapped Owner, Tenant or Guest to Request Reasonable Accommodation; Service/Support Animals Viking Arms Condominium Association, Inc." The Registration is marked and incorporated herein as "Exhibit

2"; the "Disabled/Handicapped Reasonable Accommodation Policy" is marked and incorporated

herein as "Exhibit 3."

21.     VIKING ARMS' Disabled/Handicapped Reasonable Accommodation Policy (Exhibit 3),

purported to reserve to VIKING ARMS:

> *the right, pursuant to Florida law addressing nuisances and/or safety and health concerns, to withdraw this approval at any time should the emotional support/service animal become a nuisance to, or a threat to the health and safety of others, which includes, but is not limited to: excessive barking; biting; aggressive behavior (including nipping and lunging); attacking persons or other animals; animal Owner's, Tenant's or Guest's failure to immediately and properly dispose of excrement or waste (so long as the disability permits it); failure to comply with all federal, state and local ordinances and statute related to the animal…;not maintaining the animal on a maximum, non-retractable six foot hand held leash at all times when outside of the home so long as the disability permits the use of a leash; insect/extermination problems; sanitation/odor problems; and/or Owner's, Tenant's or Guest's inability to control the animal…This requires the Owner, Tenant or Guest to ensure that the animal is properly controlled in all elevator and to take extra precautions when confined in small spaces. Additionally, the approval of the animal may be withdrawn if the requesting party is no longer disable/handicapped….Should the animal become a nuisance to others, the Owner, Tenant or Guest will be asked to remove the animal from the premises and may be prohibited from bringing the animal back… The animal may not roam or wander. No animals are permitted inside the pool…*

22.     The legal standard for a housing provider to demand removal of an assistance animal that

provides disability-related support to a resident is a high one:  the animal's behavior must pose a

threat to the health or safety of other individuals or result in substantial physical damage to the

property of others, and there must be no way of mitigating that threat.

23.     The Disabled/Handicapped Reasonable Accommodation Policy (Exhibit 3), solicited

HAYDEN's "acknowledgement" and signature, falsely implying that HAYDEN's agreement to

the illegal terms was a prerequisite to accommodation approval, and required him to acknowledge that "it is a second degree misdemeanor" to misrepresent a need for an emotional support animal.

24.     Still not satisfied, VIKING ARMS sent a letter dated March 27, 2024, to HAYDEN asserting "Viking Arms has always been a No Dog Building" and stating that "[f]or ESA Animals we request from your doctor a diagnosis and treatment stating that you are physically or mentally disabled and explain (sic) what life activities are impaired and how this dog will be helping the effects of your disability."  3/27/2024 VIKING ARMS Board of Directors Letter is marked and incorporated herein as "Exhibit 4."

25.     Additionally, VIKING ARMS foreshadowed that even if HAYDEN provided every single item demanded, that "a review by our legal counsel may be necessary" and warned that until "[t]he Board (and/or attorney)…review[d] and determine[d] if the documents submitted can be approved," his ESA was not permitted on the property. *Id.*

26.     On April 1, 2024, HAYDEN replied by letter, reminding VIKING ARMS that Dexter "was not just a dog" as he is and has been HAYDEN's ESA "for several years." 4/1/2024 HAYDEN Reply Letter is marked and incorporated herein as "Exhibit 5."  HAYDEN also requested clarification of VIKING ARMS' policy and questioned VIKING ARMS' solicitation of his "diagnosis and treatment," when a request for such information was prohibited by both the Florida Statute cited in VIKING ARMS' letter as well as by HUD Guidelines. *Id.*

27.     In reply to HAYDEN's April 1, 2024, correspondence which pushed back against VIKING ARMS' intrusive and illegal demand for his protected health information, VIKING ARMS, through its attorney-agent Marty Platts, sent HAYDEN two copies of a letter dated April 5, 2024, one by Certified Mail, Return Receipt Requested and the other by "Regular" U.S. Mail, both transmitted to an address VIKING ARMS knew was at the time occupied not by HAYDEN but

by HAYDEN's tenants.  The 4/5/2024 Certified Mail Letter is marked and incorporated herein as "Exhibit 6."

28.   Attorney Platts gratuitously cited a statute criminalizing fraudulent requests for accommodation and further warned that "a health professional who provides information, including written documentation, indicating that a person has a disability or which documentation supports a person's need for an ESA without personal knowledge of the person's disability or disability-related need for the specific ESA, is subject to disciplinary action." *Id.*

29.   Neither VIKING ARMS nor Attorney Platts had any reason whatsoever to suspect that HAYDEN was faking his need for an emotional support animal or that Dr. Laurice Gabriel lacked personal knowledge regarding HAYDEN's disability and/or his need to reside with Dexter for emotional support; the gratuitous "legal advice" was intended solely to intimidate HAYDEN.

30.   The letter from VIKING ARMS demanded that HAYDEN provide further information "within fifteen (15) days of the date of the letter" as "[t]ime is of the essence," even though neither HAYDEN or his ESA were residing at VIKING ARMS, and reiterated the warning that HAYDEN's "dog is not allowed on the property" until the Association has the additional information requested and assents approval in writing.  *Id.*

*31.*   While VIKING ARMS claimed to have been evaluating HAYDEN's request for reasonable accommodation, the April 5, 2024, correspondence ostensibly conveying VIKING ARMS's "request for further information" made it clear that persons with disabilities that rely upon assistance animals were not welcomed but rather merely tolerated in the VIKING ARMS Community.  See *id.*

32.     Additionally, VIKING ARMS' "No Dog Building" declaration and policy, expressly proclaimed to HAYDEN, further underscores that persons with disabilities that rely upon assistance animals are not welcomed – *period* – at VIKING ARMS. Exhibit 4.

33.     On April 16, 2024, HAYDEN replied to Attorney Platts, explaining that while he had received Platts' letter dated April 5th and postmarked April 9th, it was not until April 10th or 11th at which time he conveyed it to his Doctor and was awaiting her review and response. 4/16/2024 HAYDEN Response to Certified Mail Letter is marked and incorporated herein as "Exhibit 7."

34.     On April 18, 2024, HAYDEN conveyed a third, more detailed letter to VIKING ARMS from his treating physician, Dr. Laurice Gabriel, revealing that HAYDEN suffers from tremors as well as stress and anxiety because he has Parkinson's disease, and again verifying that HAYDEN has a disability-related need to reside with his dog, Dexter, for emotional support. 4/18/2024 HAYDEN Letter and Disability Verification Letter ("DVL") which is marked and incorporated herein as "Exhibit 8" and "Exhibit 9," respectively.

35.     The DVL stated:

> Thomas Eugene Hayden is my patient, and has been under my care since 2017. I am familiar with his history and the functional limitations imposed by his Parkinson's disease. He meets the definition of disability under the Americans with Disabilities Act. The Fair Husing Act, and the Rehabilitation Act of 1973.
>
> His Parkinson's disease has both visible (tremors) and non-visible symptoms (comping with anxiety and stress). His tremors are exacerbated by anxiety and stress. In order to help ameliorate these symptoms, I am recommending an emotional support animal (Dexter). This emotional support animal is necessary to provide therapeutic emotional support that helps alleviate the symptoms of his Parkson's disease.
>
> Should you have additional questions, please do not hesitate to contact me. Due to his chronic medical condition, he would benefit from an emotional support animal. Feel free to contact my office with any questions.

Exhibit 9.

36.     Even a letter from HAYDEN's doctor revealing HAYDEN's diagnosis of Parkinson's disease and attesting that Dexter's therapeutic emotional support helped alleviate the symptoms of his Parkinson's disease was not adequate for VIKING ARMS's counsel, who called HAYDEN on April 18, 2024, as a "courtesy" to inform him that Dr. Gabriel's second letter did not explain "what major life activity is impaired" or how Dexter ameliorates the impairment.

37.     At all times material, VIKING ARMS was aware of HAYDEN's disability and that his dog is an emotional support animal.

38.     At no point did any agent or representative of VIKING ARMS accept HAYDEN's repeated invitations to speak to HAYDEN's treating physician about the matters VIKING ARMS claimed it needed HAYDEN's physician to address in an "updated letter," instead VIKING ARMS sent harassing letters from its Board and through its counsel requesting extraneous information and warning that Dexter was not allowed on the property until its demand for extraneous information was satisfied.

39.     The heavy-handed and unduly aggressive nature of VIKING ARMS's one-sided communications to HAYDEN regarding his emotional support animal, coupled with the discriminatory conditions upon  any accommodation, assuming one is ever granted, have caused HAYDEN to be anxious, depressed, and feel unwelcome at VIKING ARMS all of which have exacerbated his anxiety and stress as well as the symptoms of his Parkinson's disease.

40.     VIKING ARMS' actions were, and continue to be, intentional, deliberate, willful, and in total and reckless disregard of HAYDEN's rights, and show total indifference to HAYDEN's disability.

41.     VIKING ARMS' actions are motivated by evil motive or intent, or involve reckless or callous indifference to HAYDEN's federally-protected rights insofar as VIKING ARMS' knowledge that its action are in violation of federal law.

42.     HAYDEN has been injured by VIKING ARMS' discriminatory housing practices and therefore qualifies as an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

43.     As a direct and proximate result of VIKING ARMS' conduct, HAYDEN has incurred and continues to incur attorney's fees, and has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

44.     HAYDEN retained undersigned counsel and is obligated to pay a reasonable fee for their services.

## V. CAUSES OF ACTION

### COUNT 1
### FAILURE TO ACCOMMODATE

45.     Plaintiff re-alleges and incorporate by reference Paragraphs 1-44 as if fully set forth herein.

46.     HAYDEN suffers from Parkinson's disease, a progressive physiological disorder which causes unintended or uncontrollable movements, such as shaking, stiffness, and difficulty with balance and coordination.

47.     Parkinson's disease substantially limits HAYDEN's major life activities.

48.     HAYDEN experiences tremors that are worsened by stress and anxiety.

49.     HAYDEN has an emotional support animal that help ameliorate the symptoms of his disabilities by reducing his stress and anxiety.

50.     HAYDEN has a disability-related need to live with his emotional support animal in order to have equal use and enjoyment of his unit in VIKING ARMS.

51.    HAYDEN requested that VIKING ARMS waive its no dog rule so that he may reside at VIKING ARMS with his emotional support animal.

52.    VIKING ARMS was provided credible documentation establishing HAYDEN's disability and that the animal in question provides disability-related emotional support.

53.    VIKING ARMS has actual knowledge of HAYDEN's disability- related need to live with his emotional support animal.

54.    Rather than grant HAYDEN an accommodation, VIKING ARMS has illegally demanded to know his diagnosis and demanded that HAYDEN sign its Disabled/Handicapped Reasonable Accommodation Policy (Exhibit 3) reserving to VIKING ARMS the ability to unilaterally withdraw its approval of an accommodation for a variety of trivial offenses.

55.    The Disabled/Handicapped Reasonable Accommodation Policy HAYDEN was required to sign forced him to acknowledge that it is a second-degree misdemeanor to misrepresent himself as having a disability-related need for and emotional support animal.

56.     When HAYDEN questioned VIKING ARMS demand that he reveal his diagnosis, VIKING ARMS enlisted its attorney to send a lengthy letter to HAYDEN again attempting to intimidate him by warning that it is a crime to misrepresent a need for an emotional support animal.

57.    Even after HAYDEN provided a second letter from his doctor revealing his diagnosis and attesting that his emotional support animal provides "therapeutic emotional support that helps alleviate symptoms of his Parkinson's disease," no accommodation was granted.

58.    VIKING ARMS, through its attorney, rejected Dr. Gabriel's letter because it failed to explain "what major life activity is impacted" and how "the animal ameliorates the impairment."

59.    Parkinson's disease is a progressive, degenerative disease of the nervous system that affects both motor and non-motor functions. Operation of the neurological system is a major life activity,

presumably the ability to control one's limbs is also a major life activity. Dr. Gabriel's letter specifically states his dog provides therapeutic emotional support.

60.     Dr. Garbriel's letter provided more than sufficient information to verify HAYDEN's need for an accommodation, but was rejected because it did not contain magic words like "major life activity."

61.     Accommodating HAYDEN's need to reside with Dexter for emotional support would not: (1) result in substantial physical damage to the property of others or that of VIKING ARMS; (2) pose an undue financial and administrative burden to VIKING ARMS; or (3) fundamentally alter the nature of VIKING ARMS operations as a housing provider.

62.     VIKING ARMS' failure to waive its No Dog Policy to accommodate HAYDEN's disability is discriminatory and unlawful.

63.     VIKING ARMS' actions and conduct constitute a conscious and reckless disregard for HAYDEN's rights and show total indifference to HAYDEN's disabilities.

64.     VIKING ARMS violated 42 U.S.C. § 3604(f)(3)(B) by failing to make reasonable accommodations in its rules, policies, practices, or services when such accommodations are necessary to afford HAYDEN an equal opportunity to use and enjoy a dwelling.

65.     The discriminatory conduct of VIKING ARMS is intentional, willful, and taken in total disregard for HAYDEN's rights.

66.     As a direct and proximate result of VIKING ARMS' failure to accommodate, HAYDEN suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

**COUNT 2**
**MAKING A DWELLING UNAVAILABLE ON ACCOUNT OF DISABILITY**

67.     HAYDEN re-alleges and incorporates by reference Paragraphs 1-44 as if fully set forth herein.

68.     HAYDEN suffers from Parkinson's disease, a progressive physiological disorder which causes unintended or uncontrollable movements, such as shaking, stiffness, and difficulty with balance and coordination.

69.     HAYDEN experiences tremors that are worsened by stress and anxiety.

70.     HAYDEN has a disability-related need to live with his emotional support animal, Dexter, in order to have the same opportunity to use and enjoy his dwelling at VIKING ARMS as any non-disabled resident because living with Dexter lessens HAYDEN's stress and anxiety and helps ameliorate the symptoms of his Parkinson's disease.

71.     HAYDEN requested that VIKING ARMS waive its dog prohibition policy so that he may reside with his emotional support animal.

72.     VIKING ARMS was provided reliable verification of HAYDEN's disability and disability-related need to live with Dexter.

73.     Defendant, fully knowing of HAYDEN'S disability-related need to live with his assistance animal, nonetheless forbid HAYDEN from bringing Dexter onto VIKING ARMS' property, which included HAYDEN's own home.

74.     VIKING ARMS had actual knowledge of HAYDEN's disability and disability-related need to live with Dexter.

75.     VIKING ARMS' actions and conduct constitute a conscious and reckless disregard for HAYDEN's rights and show total indifference for his disability.

76.     VIKING ARMS' actions and conduct constitute a conscious and reckless disregard for HAYDEN's rights and show total indifference for all persons suffering with Parkinson's disease.

77.     The foregoing conduct and acts of Defendant constitute discrimination against a person with a disability in violation of 42 U.S.C.§ 3604(f)(l)(A), FHA, by making a dwelling unavailable because of a handicap.

78.     As a result of the Defendant's conduct, Plaintiff has suffered damages.

79.     The discriminatory conduct and actions of Defendant were intentional, willful, and taken in blatant disregard for Plaintiff's rights.

80.     As a direct and proximate result of VIKING ARMS' discriminatory conduct, HAYDEN has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

        **WHISEFORE,** Plaintiff, THOMAS HAYDEN, demands judgment against Defendant, VIKING ARMS CONDOMINIUM ASSOCIATION, INC., declaring that its actions violated, *inter alia*, the Fair Housing Act (and amendments thereto) by discriminating against a person with a disability, and awarding Plaintiff compensatory damages, punitive damages, attorneys' fees and costs, and injunctive relief, as well as any other relief as this Court deems just and equitable.

### COUNT 3
### ILLEGAL INTIMIDATION – DISABLED/HANDICAPPED REASONABLE ACCOMMODATION POLICY

81.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-44 as if fully set forth herein.

82.     Pursuant to 42 U.S.C. § 3617, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 42 U.S.C.S. §§ 3603, 3604, and 3606."

14

83.     VIKING ARMS  had adopted "Policies and Procedures for Disabled Handicapped Owner, Tenant or Guest to Request Reasonable Accommodation; Service/Support Animals Viking Arms Condominium Association Inc." (Exhibit 3, Disabled/Handicapped Reasonable Accommodation Policy) that is clearly intended to discourage residents and potential residents from requesting accommodations for assistance animals.

84.     The Disabled/Handicapped Reasonable Accommodation Policy warns:

> Please be advised that Florida Statute Section 817.265, states, in relevant part:
>
> A person who falsifies information or written documentation, or knowingly provides fraudulent information or written documentation, for an emotional support animal ... or otherwise knowingly and willfully misrepresents himself or herself, through his or her conduct or through a verbal or written notice, as having a disability or disability related need for an emotional support animal or being otherwise qualified to use an emotional support animal, commits a misdemeanor of the second degree, punishable as provided in s. 775 .082 or s. 775.083 and within 6 months after a conviction under this section , must perform 30 hours of community service for an organization that serves persons with disabilities or for another entity or organization that the court determines is appropriate.

85.     The VIKING ARMS Disabled/Handicapped Reasonable Accommodation Policy also gratuitously advises that:

> Florida Statute Section 413.08(9), states, in relevant part:
>
> A person who knowingly and willfully misrepresents herself or himself, through conduct or verbal or written notice, as using a service animal and being qualified to use a service animal ... commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775 .083 and must perform 30 hours of community service for an organization that serves individuals with disabilities, or for another entity or organization at the discretion of the court, to be completed in not more than 6 months.

86.     By adopting and implementing its Disabled/Handicapped Reasonable Accommodation Policy and forcing HAYDEN to sign a document acknowledging that it is a second degree misdemeanor to misrepresent the need for an emotional support animal, VIKING ARMS violated 42 U.S.C. § 3617 of the FHA by attempting to intimidate HAYDEN and other residents and potential residents in the exercise and enjoyment of their fair housing rights.

87.     The discriminatory conduct of VIKING ARMS was intentional, willful, and taken in disregard for Plaintiff's rights.

88.     As a direct and proximate result of the Defendant's conduct, the Plaintiff has incurred and continues to incur attorney's fees, and suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

    **WHISEFORE,** Plaintiff, THOMAS HAYDEN, demands judgment against Defendant, VIKING ARMS CONDOMINIUM ASSOCIATION, INC., declaring that its violated, *inter alia*, the Fair Housing Act (and amendments thereto) by discriminating against a person with a disability, and awarding Plaintiff compensatory damages, punitive damages, attorneys' fees and costs, and injunctive relief, as well as any other relief as this Court deems just and equitable.

**COUNT 4**
**ILLEGAL INTIMIDATION – THREATENING ATTORNEY LETTER**

89.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-44 as if fully set forth herein.

90.     Pursuant to 42 U.S.C. § 3617, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 42 U.S.C.S. §§ 3603, 3604, and 3606."

91.     In response to Plaintiff's request for accommodation he received a letter from an attorney implying that he was faking his need for an emotional support animal and gratuitously warning him that it is a second-degree misdemeanor to misrepresent a need for an emotional support animal.

92.     Neither VIKING ARMS or its attorney had any reason whatsoever to suspect that HAYDEN's need for an accommodation is not based upon a legitimate, disability-related need for an emotional support animal.

93.     VIKING ARMS violated 42 U.S.C. § 3617 of the FHA by attempting to intimidate HAYDEN in the exercise and enjoyment of his fair housing rights.

94.     The discriminatory conduct of VIKING ARMS was intentional, willful, and taken in disregard for Plaintiff's rights.

95.     As a direct and proximate result of the Defendant's conduct, the Plaintiff has incurred and continues to incur attorney's fees, and suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

**WHISEFORE,** Plaintiff, THOMAS HAYDEN, demands judgment against Defendant, VIKING ARMS CONDOMINIUM ASSOCIATION, INC., declaring that its violated, *inter alia*, the Fair Housing Act (and amendments thereto) by discriminating against a person with a disability, and awarding Plaintiff compensatory damages, punitive damages, attorneys' fees and costs, and injunctive relief, as well as any other relief as this Court deems just and equitable.

## VI.  THIS COURT'S POWER TO GRANT RELIEF

96.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 44, as if fully set forth herein.

97.     Plaintiff has suffered and incurred irreparable damage, and continues to suffer and incur irreparable damage.

98.     The FHA and Rule 65 of the Federal Rules of Civil Procedure, collectively and singularly, empower this Court to grant a temporary restraining order, preliminary injunctive and permanent injunctive relief, and/or such other relief as the Court may deem appropriate to hold and redress the violations of any provision of law enforced by the FHA. The Court, in the exercise of its equitable jurisdiction may award financial relief, accommodation directives, policy modification, and restoration of access privileges to prevent and remedy any violation of any provision of law enforced by the FHA

### VII. PRAYER FOR RELIEF

**WHISEFORE,** Plaintiff THOMAS HAYDEN, demands judgment against Defendant, VIKING ARMS CONDOMINIUM ASSOCIATION, INC., and respectfully requests that this Court enter an Order:

a)  declaring that the actions of VIKING ARMS CONDOMINIUM ASSOCIATION, INC. violated, *inter alia*, the Fair Housing Act (and amendments thereto) by discriminating against persons with a disability;

b)  issuing a temporary restraining order and preliminary injunction immediately enjoining and prohibiting VIKING ARMS CONDOMINIUM ASSOCIATION, INC., including but not limited to its Association members, future members, Board of Directors, Officers, property managers, employees, agents, volunteers, interns, attorneys, and representatives, from removing, tampering with, altering, inhibiting, precluding, depriving, limiting, or otherwise interfering with HAYDEN's occupancy of his Unit

and/or the presence of his emotional support animal at VIKING ARMS CONDOMINIUM ASSOCIATION, INC.;

c) entering a permanent injunction enjoining and prohibiting Defendant VIKING ARMS CONDOMINIUM ASSOCIATION, INC. from discriminating against any person based upon handicap by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap an equal right to enjoy a dwelling or by requiring persons to acknowledge and sign terms of residency that are not in compliance with the FHA;

d) requiring Defendant VIKING ARMS CONDOMINIUM ASSOCIATION, INC. to notify and distribute, in writing to each and every resident of the VIKING ARMS CONDOMINIUM ASSOCIATION, INC. community, a legal statement enumerating its residents' FHA rights with respect to, among other things, disability-related accommodations;

e) awarding to Plaintiff such damages as would fully compensate his for his injuries caused by VIKING ARMS CONDOMINIUM ASSOCIATION, INC.'s discriminatory conduct;

f) awarding to Plaintiff punitive damages;

g) awarding to Plaintiff his attorney's fees and costs incurred in bringing this action and associated and affiliated with enforcement of the FHA and otherwise associated with his protection thereunder; and

h) granting all other relief as this Court deems just and equitable.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.


Respectfully submitted,

VENZA LAW, PLLC
931 Village Boulevard, #905-322
West Palm Beach, FL 33409
Office: (561) 596-6329
Email: dvenza@venzalawpllc.com

MARCY I. LAHART, P.A.
249 SE Tuscawilla Road
Micanopy, FL 32667
Office: (352) 224-5699
Facsimile: (888) 400-1464
Email: marcy@floridaanimallawyer.com


BY: *s / Denese Venza*
Denese Venza, Esq.
Florida Bar No. 599220
*Counsel for Plaintiff*

BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
*Counsel for Plaintiff*